60387/00040155
**HEARING DATE: February 24, 2009, at 10:00 a.m. prevailing Eastern time**
**OBJECTION DEADLINE: February 21, 2009, at 4:00 p.m. prevailing Eastern time**

Jay B. Itkowitz (JBI-5349)
Simon W. Reiff (SR-2356)
ITKOWITZ & HARWOOD
305 Broadway, 7th Floor
New York, New York 10007
(212) 822-1400
jitkowitz@itkowitz.com
sreiff@itkowitz.com

*Attorneys for Creditor*
*Super Nova 330 LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                         :
In re:                                       :        Chapter 7
                                         :
Association of Graphic Communications, Inc.   :        Case No. 07-10278 (BRL)
                                         :
                         Debtor.        :
-------------------------------------------------------------X

**SUPER NOVA 330 LLC'S MEMORANDUM OF LAW IN SUPPORT OF SUPER NOVA'S MOTION FOR ADMINISTRATIVE EXPENSES PURSUANT TO § 365(D)(3) <u>OF THE BANKRUPTCY CODE ARISING FROM A COMMERCIAL LEASE</u>**

        Super Nova 330 LLC (**"Super Nova"**) submits this memorandum of law in support of Super Nova's motion for administrative expenses (the **"Motion"**), arising from a lease for nonresidential real property, which lease is dated February 10th, 1992, between Four Star Holding Company c/o David Yagoda, predecessor-in-interest to Super Nova, as landlord, and Association of the Graphic Arts, Inc., predecessor-in-interest to Association of Graphic Communications, Inc. (**"Debtor"**),[1] as tenant, as amended by a Lease Modification and Extension Agreement dated February 11, 2002 (the **"Lease"**), for a portion of the 9th Floor (the **"Premises"**), in the building known as 330 Seventh Avenue, in New York, New York (the

---

[1] The term "Debtor" means debtor and/or debtor-in-possession throughout.

**"Building"**).  As indicated below, Super Nova is entitled to payment as administrative expenses pursuant to Title 11 of the United States Code (the **"Bankruptcy Code"** or **"Code"**), § 365(d)(3), for arrears in the amount of **$67,336.56**, equal to arrears in the amount of **$51,989.46** (the **"Post-Petition Arrears"**) accruing under the Lease after February 2, 2007 (the **"Petition Date"**), plus attorneys' fees in the amount of **$15,347.10** (the **"Attorneys' Fees"**) and prejudgment interest.

Under settled New York law, Debtor remained in possession of the Premises not only after the Petition Date but also after February 28, 2007 (the **"Expiration Date"**), the date upon which the Lease expired of its own terms.  As a result, Debtor was and remains obligated to pay for the rent that accrued under the Lease as well as any use and occupancy after the Expiration Date until April 24, 2007 (the **"Eviction Date"**), when Super Nova finally regained possession of the Premises from Debtor.  Hence, Super Nova is entitled to payment for the Post-Petition Arrears as an administrative expense pursuant to § 365(d)(3) of the Code.  Moreover, Super Nova is entitled to prejudgment interest and attorneys' fees as an administrative expense.[2]

## Factual Background

A full factual background is found in the Declaration of Jay B. Itkowitz in Support of Super Nova's Motion for Administrative Expenses (the **"Itkowitz Declaration"**), the Affidavit of Alphie Toro in Support of Super Nova's Motion for Administrative Expenses (the **"Toro Affidavit"**), and the exhibits attached thereto.[3]  The Court is respectfully referred to those documents for the facts underlying the instant motion.

---

[2] Super Nova timely filed a Proof of Claim, Claim #22 (the **"Claim"**), on July 6, 2007, asserting a general unsecured claim for pre-petition rent, clean-up costs, and legal fees and an unsecured priority claim for the Post-Petition Arrears.

[3] All references herein to exhibits are made with respect to exhibits annexed to the Toro Affidavit.

**Argument**

**I**

**UNDER NEW YORK LAW, DEBTOR BECAME EITHER A HOLDOVER TENANT OR A TENANT AT SUFFERANCE BY FAILING TO VACATE PRIOR TO THE EXPIRATION OF THE LEASE ON ITS OWN TERMS. DEBTOR AND/OR THE TRUSTEE REMAINED IN POSSESSION UNTIL DEBTOR WAS EVICTED PURSUANT TO AN ORDER FROM THIS COURT LIFTING THE AUTOMATIC STAY AND THUS CREATED A HOLDOVER TENANCY. EVEN ASSUMING, THOUGH, THAT A HOLDOVER TENANCY WAS NOT CREATED BY DEBTOR'S AND/OR TRUSTEE'S FAILURE TO VACATE, THE LEASE SHOULD BE DEEMED UNEXPIRED.**

As an initial matter, Debtor became a holdover tenant from the date the Lease expired of its own terms on February 28, 2007, until Super Nova evicted Debtor, and thus the Debtor and/or Trustee became obligated to pay holdover rent. Even if Debtor's failure to vacate after the Expiration Date created a tenancy at sufferance, though, the Debtor and/or Trustee were obligated to pay use and occupancy pursuant to the Lease because under Second Circuit precedents, the Lease should be deemed "unexpired" for purposes of the Bankruptcy Code.

**A**

In New York, one way that a holdover tenancy can be created is when a tenant remains in possession, after the expiration of the lease on its own terms, by keeping business records and other objects in the Premises after it ceases day-to-day operations with the intention of retrieving the personal property at a later date. *See Lordae Realty Corp. v. Montefiore Medical Center*, 232 A.D.2d 338, 338 (N.Y. App. Div., 1st Dept. 1996) (finding that when tenant allegedly had used the premises as a storage facility after ceasing to use the space for business

3

purposes, a question of fact arose as to whether the mere leaving of possessions behind created a month-to-month tenancy); *accord*, *Niagara Frontier Transportation Authority v. Euro-United Corp.*, 303 A.D.2d 920, 922 (N.Y. App. Div., 4th Dept. 2003) (finding, among other considerations, that the tenant did not intend to abandon the personal property left in the premises and therefore concluding that a month-to-month tenancy had been established). In deciding whether a holdover tenancy has arisen, courts usually consider the nature of the leased property, the amount paid as rent, the value of the real property, the value of the personal property left on the leased premises, the intent with which it is left, and all other facts and circumstances surrounding the transaction. *Niagara Frontier*, 303 A.D.3d, at 922 (citing *Canfield v. Elmer E. Harris & Co.*, 222 A.D. 326, 329 (N.Y. App. Div., 4th Dept. 1927)).

In this case, Debtor and/or the trustee, Ian Gazes (the **"Trustee"**) unmistakably remained in possession of the Premises until ousted forcibly by eviction. Debtor ceased operating its business in the Premises but left its business records behind, thus maintaining possession. Moreover, in a phone conversation with Super Nova's attorneys, the Trustee[4] advised that he would surrender possession of the Premises as soon as he could recover the records and books of the Debtor. That conversation was memorialized in a letter, dated March 27, 2007, and was not refuted by the Trustee. March 27 Letter, Ex. "3", at 1; *see* Toro Affidavit ¶¶ 9-10. The failure of the Debtor and/or Trustee to vacate the Premises voluntarily left Super Nova in the position of having to move to lift the automatic stay in order to obtain possession. Debtor and/or the Trustee thus had no intention of abandoning either the records and books and/or possession of the Premises; instead, Debtor and/or the Trustee remained in possession of the Premises after the Petition Date, after the expiration of the Lease on its own terms, and even after this Court granted Super Nova's motion to lift the automatic stay. Possession was only

---

[4] The Trustee has retained his law firm, Gazes LLC, as counsel to the Trustee.

4

obtained after this Court lifted the automatic stay and a state marshal effected an eviction.[5]
Hence, the Debtor and/or the Trustee, by using and occupying the Premises after the expiration of the Lease on its own terms, created a holdover tenancy that terminated only upon eviction.

**B**

Even assuming, arguendo, that a tenancy at sufferance and not a holdover tenancy arose when the Lease expired of its own terms on February 28, 2008, the Debtor and/or Trustee still were obligated to pay for their use and occupancy through the Eviction Date. In *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 398 (S.D.N.Y. Bankr. 1999), the Bankruptcy Court held that a commercial lessor was entitled to administrative rent for use and occupancy despite a *pre-petition* state court determination that the lease had expired. The *P.J. Clarke* court further noted that in this Circuit, a lease is "unexpired" if such lease "can" be reinstated under state procedures, *id.* (citing *In re Stoltz*, 197 F.3d 625 (2d Cir. 1999)). Indeed, in *Stoltz*, the lease in question had expired of its own terms prior to vacatur and the debtor-tenant had failed to tender rent. *Stoltz*, 197 F.3d, at 631. However, the *Stoltz* court deemed the lease "unexpired" because the tenant *could* have created a month-to-month tenancy under Vermont law by tendering rent. *Id.* Similarly, in New York, a month-to-month tenancy is created when a tenant whose term is longer than a month holds over after the expiration of the term and the landlord accepts rent thereafter. *See* Real Prop. L. § 232-c (McKinney's 2009); *see also Zobe, LLC v. United Northern Bancshares, Ltd.*, 251 A.D.2d 237 (1st Dept. 1998). Hence, the instant Lease should be deemed "unexpired" because a month-to-month tenancy could have been created had the Debtor and/or Trustee tendered rent after the Expiration Date.

---

[5] This Court granted Super Nova's request in an April 11 Order. *See* Ex. "4". Super Nova regained possession, not by Debtor's and/or Trustee's voluntary vacatur, but by an eviction, dated April 24, 2007. *See* Eviction Papers, Ex. "5".

5

The inescapable conclusion is that the Debtor and/or Trustee were obligated to pay for possessing the Premises from the Petition Date to the Eviction Date, no matter how the tenancy is characterized.

## II

> **SECTIONS 365(D)(3) PROVIDES LANDLORDS WITH A MECHANISM BY WHICH THE POST-PETITION COSTS ASSOCIATED WITH UNEXPIRED LEASES FOR NON-RESIDENTIAL REAL PROPERTY WITH DEBTORS MAY BE RECOVERED AS ADMINISTRATIVE EXPENSES OF THE BANKRUPTCY ESTATE. THE DEBTOR'S OBLIGATIONS RUN TO THE REJECTION DATE, WHICH HERE IS THE SAME AS THE EVICTION DATE. UNDER § 365(D)(3), SUPER NOVA IS ENTITLED TO PAYMENT OF THE POST-PETITION ARREARS AS ADMINISTRATIVE EXPENSES.**

Super Nova's rights under the Bankruptcy Code to payment for administrative expenses arising after the Petition Date stem from § 365(d)(3) of the Bankruptcy Code.

## A

> **UNDER SECTION 365(D)(3), THE TRUSTEE MUST TIMELY SATISFY DEBTOR'S POST-PETITION OBLIGATIONS TO THE LANDLORD UNTIL THE UNEXPIRED LEASE IS ASSUMED OR REJECTED. SUCH OBLIGATIONS ARE TO BE PAID AS ADMINISTRATIVE EXPENSES. HERE, THE TRUSTEE FAILED TO COMPLY WITH HIS OBLIGATIONS UNDER THE BANKRUPTCY CODE. SUPER NOVA IS, AT A MINIMUM, ENTITLED TO PAYMENT OF THE POST-PETITION ARREARS.**

Section 365 of the Bankruptcy Code provides in relevant part as follows:

> (d) … (3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365 (b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503 (b)(1) of this title*. … Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.
>
> (4)(A) … [A]n unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and *the trustee shall immediately surrender that nonresidential real property to the lessor*, if the trustee does not assume or reject the unexpired lease by the earlier of—
> (i) the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.

Bankruptcy Code, §§ 365(d)(3)-(4) (emphasis added).

In this case, the Trustee neither assumed nor rejected the unexpired Lease.[6] Therefore, under § 365(d)(3), the Trustee was obligated to "timely perform all the obligations" of Debtor until the Lease was deemed rejected. *See In re R.H. Macy & Co., Inc.*, 170 B.R. 69, 73 (S.D.N.Y. Bankr. 1994) (Lifland, C.J.). *See also In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1128 (7th Cir. 1998) ("To give relief to landlords, Congress passed section 365(d)(3), which takes them out from under the 'actual, necessary' provision of 503(b)(1) and allows them during that awkward post[-]petition pre[-]rejection period to collect the rent fixed in the lease."); *In re Petrie Retail, Inc.*, 233 B.R. 256, 259 (S.D.N.Y. 1999) ("Section 365(d)(3) … entitl[es] the landlord to collect the full rent fixed in the lease for the period between petition and rejection.").

---

[6] As indicated above in Part I, since the Lease did not expire on its own terms due to Debtor's holding over in possession, the Lease remained "unexpired" for purposes of § 365(d)(3) until the Eviction Date. This point is fully explained below in Part II.B.

7

Here, the Trustee did not perform Debtor's obligations to Super Nova at all. He did not pay the post-petition rent, and he did not vacate the Premises, causing an unnecessary delay in regaining possession and requiring needless motion practice on Super Nova's part to lift the automatic stay. Indeed, a significant part of the administrative rent charges that form the basis of the instant motion would not have been incurred but for the Trustee's failure to perform the Debtor's obligations to Super Nova.

The Code is silent as to the consequences of a trustee's or debtor's failure to comply with § 365(d)(3). At a minimum, however, the Trustee should be compelled to make the payments due under that provision. *See In re Valley Media, Inc.*, 290 B.R., at 77 (D.Del. Bankr. 2003) (citing *In re J.T. Rapps, Inc.*, 225 B.R. 257, 262-63 (D.Mass. Bankr. 1998)); *In re Pudgie's Development of N.Y., Inc.*, 239 B.R. 688, 695 (S.D.N.Y. 1999).

**B**

**UNDER SECTION 365(D)(4)(A) OF THE CODE, AN UNEXPIRED LEASE IS DEEMED REJECTED AS OF THE EARLIER OF EITHER 120 DAYS AFTER THE PETITION DATE OR THE DATE OF THE ENTRY OF AN ORDER CONFIRMING A PLAN. HERE, HOWEVER, THE LEASE EXPIRED AFTER THE PETITION DATE BUT BEFORE EITHER OF THE EVENTS DESCRIBED IN SECTION 365(D)(4)(A). SUPER NOVA SUBMITS THAT FOR PURPOSES OF COMPUTING POST-PETITION ARREARS UNDER SECTION 365(D)(3), THE LEASE SHOULD BE DEEMED REJECTED AS OF THE EVICTION DATE.**

In this case, the Debtor and/or Trustee remained in possession after the Petition Date and after the date that the Lease expired of its own terms, and the Trustee neither assumed nor rejected the Lease. One question that arises is when the Lease was "rejected" for purposes of

§ 365(d)(3). Section 365(d)(4)(A) provides that such a Lease, if unexpired, shall be deemed rejected, and "the trustee shall immediately surrender that nonresidential real property to lessor," if the Lease has not been assumed or rejected by the earlier of 120 days after the Petition Date, or the date of the entry of an order confirming a plan. Since the latter prong of § 365(d)(4)(A) is inapplicable here, it would appear that the Lease should not be deemed rejected until June 2, 2007, or 120 days after the Petition Date.

Nonetheless, Super Nova acknowledges that the rejection date for purposes of § 365(d)(4)(A) of the Code ought not be deemed to be later than the Eviction Date, i.e., April 24, 2007. Prior to Debtor's eviction, the Trustee had not surrendered possession of the Premises to Super Nova, as is required by § 365(d)(4)(A). Moreover, due to Debtor's and/or Trustee's holding over, the Lease was unexpired until the Eviction Date. The most logical reading of § 365(d) in light of these facts is that the Lease was deemed rejected as of the Eviction Date and that the Trustee must "timely perform" Debtor's obligations from the Petition Date to the Eviction Date.

Finally, as indicated in Part I.B above, even assuming that this Court determines that Debtor did not become a holdover tenant after February 28, 2007, this Court must then conclude that Debtor became obliged to pay Super Nova for the use and occupancy of the Premises from February 28, 2008, to the Eviction Date.[7] *See P.J. Clarke*, 265 B.R., at 399. That duty clearly is a debtor's "obligation" for purposes of § 365(d)(3) that must be "timely performe[ed]." Either way, § 365(d)(3) of the Code obligates the Trustee to compensate Super Nova "timely" for the Post-Petition Arrears.

---

[7] Bankruptcy Courts in this Circuit repeatedly have held that even in the event that debtor vacated the premises, the debtor nonetheless is responsible for use and occupancy until the rejection date. *See In re Sandra Rothman, SLP, P.C.*, 2007 WL 2261609, at *7 (E.D.N.Y. Bankr. Aug. 2, 2007) (stating that "[t]he overwhelming majority of case law is clear that § 365(d)(3) applies even where the debtor has vacated the premises prior to rejection" and citing, among others, *In re Wingspread Corp.*, 116 B.R. 915, 925 (S.D.N.Y. Bankr. 1990)).

# III

**SUPER NOVA IS ENTITLED TO ATTORNEYS' FEES AND INTEREST UNDER § 365(D)(3) AS AN ADMINISTRATIVE EXPENSE OF THE ESTATE, SINCE SUCH ENTITLEMENT AROSE UNDER THE LEASE AS A POST-PETITION OBLIGATION OF THE DEBTOR AND/OR TRUSTEE.**

Under the Lease,

> If Owner, … in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to *attorneys' fees*, in instituting, prosecuting or defending any action or proceedings, then Tenant will reimburse Owner for such sums paid or obligations incurred *with interest and costs*.

Lease, Ex. "2", at ¶ 19 (emphasis added).

Hence, as a matter of both New York and federal law, Super Nova is entitled to attorneys' fees as well as pre-judgment interest in the amount of 9% per annum on the Post-Petition Arrears.

## A

**SUPER NOVA IS ENTITLED TO POST-PETITION ATTORNEYS' FEES. THE LEASE EXPRESSLY PROVIDES THAT TENANT SHALL PAY ATTORNEYS' FEES IN THE EVENT THAT TENANT DEFAULTS IN THE PAYMENT OF RENT, AND IN THE BANKRUPTCY COURTS IN THIS CIRCUIT, SUCH OBLIGATIONS MUST BE SATISFIED PURSUANT TO § 365(D)(3) OF THE CODE.**

In the Bankruptcy Courts of this Circuit, "[t]he payment of attorneys' fees *is* an obligation of the lease that must be satisfied under section 365(d)(3) when the lease at issue provides for such recovery as an obligation of the Debtor." *In re Ames Dept. Stores, Inc.*, 306

B.R. 43, 81 (S.D.N.Y. Bankr. 2004) (emphasis in original); *see also In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 756-57 (S.D.N.Y. Bankr. 1986) (holding that since the lease at issue called for the recovery of attorneys' fees and interest, such obligations were entitled to the same priority under any of debtor's other obligations under § 365(d)(3)). Furthermore, Super Nova undeniably was entitled to attorneys' fees in the event that Debtor defaulted in the payment of rent. *See* Lease, Ex. "2", at ¶ 19. Thus, under § 365(d)(3) of the Code, Super Nova is entitled to all attorneys' fees arising after the Petition Date and before the Rejection Date (the **"Attorneys' Fees"**) that were incurred "in connection with any default of Tenant in the covenant to pay rent" in the amount of $15,347.10. *See* Legal Invoices, Ex. "7", at 6.

B

**SIMILARLY, SUPER NOVA IS ENTITLED TO PREJUDGMENT INTEREST IN THE AMOUNT OF NINE PERCENT (9%) PER ANNUM UNDER EITHER NEW YORK OR FEDERAL LAW.**

For the same reason that Super Nova is entitled to the Attorneys' Fees, i.e., that such entitlement is a lease obligation that is enforceable as a priority administrative expense under § 365(d)(3), Super Nova also must be paid interest on the Post-Petition Arrears. *See Westview 74th*, 59 B.R., at 756-57 (cited with approval in *Ames*, 306 B.R., at 81-82); *see also Urban Retail Properties v. Loews Cineplex Entertainment Corp.*, 2002 WL 535479, at *9 (S.D.N.Y.) (citing *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 756-67 (S.D.N.Y. Bankr. 1986)). However, even if this Court decides not to be bound by *Westview 74th* and its progeny, Super Nova is independently entitled to prejudgment interest under both New York and federal law as well.

**1**

> **AS A THRESHOLD MATTER, THIS COURT MUST DECIDE WHETHER TO APPLY NEW YORK OR FEDERAL CHOICE-OF-LAW RULES IN DETERMINING WHETHER TO GRANT PREJUDGMENT INTEREST AND HOW MUCH SUCH INTEREST SHOULD BE. HOWEVER, THERE IS ONLY AN APPARENT CONFLICT OF LAWS, SINCE UNDER BOTH CHOICE-OF-LAW RULES, NEW YORK'S PREJUDGMENT INTEREST RULES APPLY.**

Assuming that this Court does not follow *Westview 74th*, a threshold issue arises, in deciding whether to grant prejudgment interest and at what rate, as to whether to apply federal choice-of-law rules (i.e., federal common law) or to extend the rule of *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941), that federal courts sitting in diversity must apply the forum state's choice-of-law rules, to bankruptcy courts.

The Second Circuit, in analyzing this very issue, has held that bankruptcy courts confronting state court claims that do not implicate federal policy concerns should apply the choice-of-law rules of the forum state pursuant to *Klaxon*. *See In re Gaston & Snow*, 243 F.3d 599, 601-02 (2d Cir. 2001). Super Nova's position therefore is that New York's choice-of-law rules, and consequently, New York's prejudgment rules, CPLR 5001-04 (McKinney 2009), apply. *See, e.g., Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 225-28 (N.Y. 1993) (holding that in matters concerning contracts, New York courts generally will apply the law of the jurisdiction with the greatest interest in the litigation). However, even if this Court should hold that federal choice-of-law rules apply, Super Nova submits that New York's prejudgment interest rules still apply.

## 2

**UNDER THE CPLR, PREJUDGMENT INTEREST IS TO BE AWARDED BECAUSE OF TRUSTEE'S ACT OR OMISSION DEPRIVING SUPER NOVA OF POSSESSION OF THE POST-PETITION ARREARS.**

Under the New York Civil Practice Law and Rules (**"CPLR"**), prejudgment interest "shall be recovered upon a sum awarded … because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property … ." N.Y. C.P.L.R. 5001(a) (McKinney's 2009). Moreover, the interest "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* 5001(b). In addition, interest is also recoverable from the date a decision is made to the date of final judgment, *see* CPLR 5002, and from the date that the judgment is entered, *see* CPLR 5003. The rate of interest is 9% per year. CPLR 5004.

Here, the Trustee failed to perform Debtor's obligations under the Lease pursuant to § 365(d)(3) of the Bankruptcy Code. That provision, unlike § 503(b), which requires notice and a hearing prior to payment of administrative expenses, mandates that the Trustee "timely perform" Debtor's obligations. Since the Trustee did not do so, Super Nova deserves compensation for being deprived of the use of the Post-Petition Arrears.

Under New York law, "interest shall be computed upon each item from the date it was incurred." CPLR 5001(b). The Trustee had an obligation to pay Debtor's rent for the period from February 2, 2007, to February 28, 2007, in the amount of $16,637.94 (the

"**February Arrears**"), for the period from March 1, 2007, to March 30, 2007, in the amount of $19,503.60 (the "**March Arrears**"), and for the period from April 1, 2007, to April 24, 2007, in the amount of $15,847.92 (the "**April Arrears**"). Under the Lease, the arrears shall be paid on the first of the month; therefore, the February Arrears prejudgment interest runs from February 2, 2007, the March Arrears from March 1, 2007, and the April Arrears from April 1, 2007.

3

**EVEN UNDER FEDERAL CHOICE-OF-LAW RULES, CPLR 5001 APPLIES BECAUSE NO NATIONAL POLICY OF THE BANKRUPTCY CODE WOULD BE OFFENDED BY APPLYING NEW YORK'S PREJUDGMENT INTEREST RULES.**

Even if this Court should hold that federal choice-of-law rules apply and that *Westview 74th* is inapposite, Super Nova nonetheless submits that New York's prejudgment rules still apply because no national policy of the Bankruptcy Code would be offended in so doing.[8] *See In re Colonial Realty Co.*, 226 B.R. 513, 526 (D. Conn. Bankr. 1998) (citing *Blau v. Lehman*, 368 U.S. 403, 414 (1962)) (noting that it is within the discretion of the district court to award prejudgment interest); *see also In re O.P.M. Leasing Services, Inc.*, 28 B.R. 740, 747-48 (S.D.N.Y. Bankr. 1983) (Lifland, C.J.) (same as *Colonial Realty*).

Furthermore, in this Circuit, the rate of prejudgment interest is subject to the Court's discretion. *See S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996). Since no national policy would be offended by applying New York law in this case, the prejudgment interest rate should be calculated at 9% per year pursuant to CPLR 5004 as indicated above in Part III.B. *See also Westview,* 59 B.R. 747, 757 (holding that if the lease calls for interest but is silent as to the rate, CPLR 5001, 5004 applies).

---

[8] It should be noted that 28 U.S.C. § 1961 ("Interest") only provides a rule for calculating *post*-judgment interest. Title 28 is silent as to the method of computing prejudgment interest.

**Conclusion**

For the reasons provided above, Super Nova is entitled to payment as administrative expenses equal to **$67,336.56**, equal to Post-Petition Arrears in the amount of $51,989.46, plus Attorneys' Fees in the amount of $15,347.10, with prejudgment interest.

Respectfully submitted,

ITKOWITZ & HARWOOD

By: _/s/_ Jay B. Itkowitz
Jay B. Itkowitz (JBI-5349)
Simon W. Reiff (SR-2356)
305 Broadway, 7th Floor
New York, New York 10007
(646) 822-1801
jitkowitz@itkowitz.com
sreiff@itkowitz.com

*Attorneys for Creditor*
*Super Nova 330 LLC*